# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>ICON HEALTH AND FITNESS, INC., HF HOLDINGS, INC., IHF HOLDINGS, INC., AND IHF CAPITAL, INC., DELAWARE CORPORATIONS,<br><br>          Defendants. | Case No. _____ |

## COMPLAINT FOR CIVIL PENALTIES, INJUNCTIVE, AND OTHER RELIEF

Plaintiff, the United States of America, acting upon notification and authorization to the Attorney General by the Federal Trade Commission ("FTC" or "Commission"), for its Complaint alleges that:

1. Plaintiff brings this action under Sections 5(*l*) and 16(a), of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 45(*l*) and 56(a), to obtain monetary civil penalties and injunctive relief for defendants' acts and practices in violation of the September 9, 1997 final cease and desist order issued by the Commission ("Commission Order"). Docket No. C-3765, Att. A.

**JURISDICTION AND VENUE**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1345, and 1355 and under 15 U.S.C. §§ 45(*l*), and 56(a).

3. Venue in the District of Columbia is proper under 28 U.S.C. §§ 1391(b)(2), (c)(2), and 1395(a).

**DEFENDANTS**

4. Defendant ICON Health and Fitness, Inc. ("ICON") is a Delaware corporation with its place of business at 1500 S. 1000 W. Street, Logan, Utah 84321. At all times material to this Complaint, acting alone or in concert with others, ICON has advertised, marketed, distributed or sold its ab GLIDER™ products to consumers throughout the United States.

5. Defendant HF Holdings, Inc. ("HF Holdings") is a Delaware corporation with its principal office or place of business at 1500 S. 1000 W. Street, Logan, Utah 84321. HF Holdings owns 100% of ICON's stock. At all times material to this Complaint, acting alone or in concert with others, HF Holdings has advertised, marketed, distributed or sold its ab GLIDER™ products to consumers throughout the United States.

6. Defendant IHF Holdings, Inc. ("IHF Holdings") is a Delaware corporation with its principal office or place of business at 1500 S. 1000 W. Street, Logan, Utah 84321. At all times material to this Complaint, acting alone or in concert with others, IHF Holdings has advertised, marketed, distributed or sold its ab GLIDER™ products to consumers throughout the United States.

7. Defendant IHF Capital, Inc. ("IHF Capital") is a Delaware corporation with its principal office or place of business at 1500 S. 1000 W. Street, Logan, Utah 84321. At all

times material to this Complaint, acting alone or in concert with others, IHF Capital has advertised, marketed, distributed or sold its ab GLIDER™ products to consumers throughout the United States.

## COMMERCE

8. At all times material to this Complaint, the acts and practices of ICON, HF Holdings, IHF Holdings, and IHF Capital (collectively "Defendants") alleged in this Complaint have been in or affecting commerce, as "commerce" is defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

## PRIOR COMMISSION PROCEEDING

9. In a Commission proceeding bearing Docket No. C-3765, the Commission charged that Respondents ICON, IHF Holdings, and IHF Capital violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), by failing to have substantiation for claims related to their fitness product "Proform Cross Walk Treadmill." Att. B, Commission Complaint, ¶¶ 6-12. In particular, the Commission Complaint alleged Respondents made unsubstantiated claims that consumer testimonials regarding weight loss and clothing size reductions reflected the typical or ordinary experience of members of the public who used the Proform Cross Walk Treadmill. *Id*. at ¶¶ 6, 10-12. The Commission and Respondents settled the matter concurrent with the filing of the Commission Complaint with Respondents agreeing to cease and desist certain practices, including those set forth below.

10. The Commission Order states:

### I.

IT IS ORDERED that respondents, directly or through any corporation, subsidiary, division, or other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of the "Cross Walk Treadmill" or any other exercise equipment in or affecting commerce, shall not make any representation, in any manner, expressly or by implication:

- A. About the relative, comparative, or absolute

    1. rate at which users burn calories, or the number of calories users burn, through the use of such product, or

    2. weight loss users achieve through use of such product, or

    3. amount of fat or fat calories users burn through use of such product; or

- B. About the benefits, performance, or efficacy of such product with respect to calorie burning, fat burning, or weight loss,

Unless at the time the representation is made, respondents possess and rely upon competent and reliable evidence, which when appropriate must be competent and reliable scientific evidence, that substantiates the representation.

### II.

IT IS FURTHER ORDERED that respondents, directly or through any corporation, subsidiary, division, or other device, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product in or affecting commerce, shall not represent in any manner, expressly or by implication, that the experience represented by any user testimonial or endorsement of the product represents the typical or ordinary experience of members of the public who use the product, unless:

- A. At the time it is made, respondents possess and rely upon competent and reliable scientific evidence that substantiates the representation; or

- B. Respondents disclose, clearly and prominently, and in close proximity to the endorsement or testimonial, either:

    1. What the generally expected results would be for users of the product, or

    2.    The limited applicability of the endorser's experience to what consumers may generally expect to achieve, that is, that consumers should not expect to experience similar results.

For purposes of this Part, "endorsements" shall mean as defined in 16 C.F.R. § 255.0(b).

## **DEFENDANTS' COURSE OF CONDUCT**

11. Since at least August 2010, Defendants have engaged in the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of the product "ab GLIDER™" throughout the United States and abroad. The following conduct relates to three different models of Defendants' exercise equipment product, the basic ab GLIDER™, the ab GLIDER Sport™, and the ab GLIDER Platinum™ (collectively "ab GLIDER™").

12. Defendants' advertising and promotion of its ab GLIDER™ includes multiple video presentations with celebrity endorser Elisabeth Hasselbeck, and multiple consumer testimonials.

13. Defendants aired advertisements for its ab GLIDER™ from at least August 2010 to September 2012 on various television and cable programs and channels.

## **SHORT VIDEO ADVERTISEMENTS**

14. ab GLIDER™ advertisements, including video segments, appear on Defendants' website at:

http://www.proform.com/webapp/wcs/stores/servlet/Product_-1_14201_16002_29512_186869 and

http://www.proform.com/webapp/wcs/stores/servlet/Product_-1_14201_16002_29512_145203.

15. Additional ab GLIDER™ advertisements, including video segments, are available on the Internet. *See* http://www.youtube.com/watch?v=p2FKuQSqQx8.

16. The ab GLIDER™ advertisements contain consumer testimonials representing that ab GLIDER™ users lost pounds, inches, or clothing sizes. For example, one video contained the following statements:

> Leslie M. says that with the ab GLIDER™ "I can do quick, easy, it's so effective, and you know it fits into my day" while an on-screen statement emphasizes "Lost **27** lbs";
>
> Tim M. says he lost "30 inches off my body" while an on-screen statement emphasizes "Lost **30** inches";
>
> Raine B. says she was told "you look better than you did in high school" while an on-screen statement emphasizes "Lost **15** lbs  Was size 12 now size 4".

Elisabeth Hasselbeck follows these consumer endorsements, saying "When I say the ab GLIDER™ works, **it works!**" while an on-screen statement emphasizes "It Works!" *See* Att. C, at 0:02-2:09, 2:25-4:35. At no time during this video are there any qualifications or disclaimers regarding the results achieved by these consumers, but only references to ab GLIDER™ use. This video appeared on Defendants' website at least as early as September 20, 2012, and continued to appear on Defendants' website through June 4, 2013.

17.  In numerous instances, Defendants' videos attribute the consumer testimonials regarding lost pounds, inches, and clothing sizes to using the ab GLIDER™ for just 3 minutes a day.  For example, one video includes the following consumer testimonials:

> Raine B. says "It's really easy" and "I feel like I'm not even working out" while an on-screen statement emphasizes "Lost **15** lbs";

> Leslie M. says "It's fun and it's fast and the results are amazing" while an on-screen statement emphasizes "Lost **27** lbs";

> Tim M. says "You **will** lose pounds and, and you'll just be amazed by the change" while an on-screen statement emphasizes "Lost **30** inches."

These consumer testimonials are immediately followed by Elisabeth Hasselbeck saying "So who's got 3 minutes?" Att. C at 1:56-57.  Elisabeth Hasselbeck states at the beginning of this video:  "So with all this busyness, when do I work in my workout?  Whenever I have 3 minutes."  *Id*. at 0:16-0:22.

This video appeared on Defendants' website at least as early as September 20, 2012, and continued through June 4, 2013.  At no time during this video are there any qualifications or disclaimers regarding the results achieved by these consumers, but only references to using the ab GLIDER™ for 3 minutes a day.

18.  In numerous instances, the ab GLIDER™ videos reference Elisabeth Hasselbeck's "3 Minute Rapid Results DVD".

19.  In multiple videos, the voiceover promoting the "3 Minute Rapid Results DVD" says:  "The ab GLIDER™ comes with everything you need to get the results you want,

**fast**. You'll get Elisabeth Hasselbeck's exclusive 3 minute rapid results DVD, a $29 value, included with your ab GLIDER™." Simultaneously an on-screen message shows: "Elisabeth Hasselbeck's 3-MINUTE rapid results DVD."

20. Defendants created other videos that contain consumer testimonials claiming that these ab GLIDER™ consumers lost pounds, inches, or clothing sizes. Some of these videos include the statement "Achieved after 16 weeks on a controlled diet and one hour of exercise five days a week in which the AB GLIDER™ was a key component." *See* Att. C, at 5:29-6:32. The statement appears for approximately 5 seconds in small, difficult to read print as the video jumps from one consumer testimonial picture to another. This ab GLIDER™ advertisement ran repeatedly during August 2010 to February 2012. It also appeared on Defendants' website at least as early as September 20, 2012, and continued through June 4, 2013.

21. Defendants created other videos that contain consumer testimonials claiming that ab GLIDER™ users lost pounds, inches, or clothing sizes with the statement identified in Paragraph 20, but added to the end "Your results may vary." The statement appears in small, difficult to read print as the video jumps from one consumer testimonial picture to another. An ab GLIDER™ advertisement like this ran from August 2010 to December 2012.

## INFOMERCIAL

22. Defendants prepared an infomercial that included Elisabeth Hasselbeck interviewing consumers providing ab GLIDER™ testimonials. Prior to interviewing the consumers, Elisabeth Hasselbeck states "Recently we asked a handful of men and women

just like you to try the ab GLIDER™ *in their own homes for just minutes a day*. These were real people who had real concerns about their bodies. So how did they do --- check this out." (Emphasis supplied). Elisabeth Hasselbeck then proceeds to interview Raine B., Leslie M., and Micah H.

23.   While being interviewed by Elisabeth Hasselbeck, Raine B. says she lost 15 pounds and went from a size 11 to a size 4 while an on-screen message emphasizes: "lost 15 pounds, size 11 to size 4."

24.   While being interviewed by Elisabeth Hasselbeck, Leslie M. says, "I just, I decided that I wanted to make time for myself, and the ab GLIDER™ is so wonderful in that respect because it's easy to get on, it's fun, and it's fast, and the results are amazing. I can't even believe it, I was in a size 16 and I'm in a size 8 now." An on-screen message emphasizes: "lost 27 pounds, size 16 to size 8."

25.   While being interviewed by Elisabeth Hasselbeck, Micah H. says he lost 12 pounds and 8 inches off his waist while an on-screen message emphasizes: "lost 12 pounds, lost 8 inches in waist."

26.   The interview segments with Raine B., Leslie M., and Micah H. do not include any qualifications or disclaimers.

27.   Later in the infomercial, after the interview segments, Raine B. and Leslie M. appear in short video clips with the following statement in small print: "Achieved after 16 weeks on a controlled diet and one hour of exercise, five days a week in which the AB GLIDER™ was a key component. Your results may vary." The statement appears for a

total of approximately 5 seconds in small, difficult to read print as the video jumps from one consumer testimonial picture to another.

28. The infomercial ran on various channels from September 2010 through May 2011.

29. Different video advertisements used identical consumer testimonial video clips. Sometimes the video clip has an accompanying small, difficult to read statement and sometimes the video clip does not.

30. Each of the consumers providing testimonials appears in at least one video clip without any accompanying statement.

## ACTUAL CONSUMER EXPERIENCE

31. None of the consumers providing testimonials achieved their results using the ab GLIDER™ for only three minutes a day or by using only the ab GLIDER™ without engaging in other exercise or dieting.

32. The consumers identified in the testimonials were part of a program requiring them to use the ab GLIDER™ no less than 20 minutes per session for no less than 3 sessions per week. Defendants provided instructor-led group workouts for program participants two times a day every Monday through Saturday.

33. Defendants also provided program participants with unrestricted access to treadmills, exercise bikes, elliptical machines, and weight training, as well as the Ab Glider Healthy Eating Guide, during the entirety of the program.

34. Consumers who provided testimonials filled out an ICON generated questionnaire. The questionnaire asked whether the consumer dieted "during the time you

used this product?" In all of the consumer questionnaires, consumers answered they dieted while using the ab GLIDER™.

35. Consumers identified in the testimonials engaged in exercise in addition to using the ab GLIDER™. The additional exercises included circuit training, cardio, weight training, and running. For example,

- Becky M. did circuit training with weights five times a week in addition to ab GLIDER™ workouts;

- Christine W. did circuit training and cardio workouts in addition to using the ab GLIDER™;

- Leslie M. used free weights, did circuit training and did cardio exercises in addition to using the ab GLIDER™;

- Tim M. used free weights, did circuit training, and ran in addition to using the ab GLIDER™.

36. Defendants' revenues from ab GLIDER™ sales were $28,530,777 through April 15, 2013.

## VIOLATIONS OF COMMISSION ORDER

## FIRST CAUSE OF ACTION

37. Through the statements described in Paragraphs 11-30, and other statements like those, Defendants have represented that consumers will lose pounds, inches, or clothing sizes by:

    a. using only the ab GLIDER™ without engaging in other exercise or dieting; or

    b. using the ab GLIDER™ for only 3 minutes a day.

38. Defendants do not possess, and did not possess at the time the representations were made, competent and reliable scientific evidence to substantiate the representations described in Paragraph 37. Therefore, Defendants have violated Sections I.A.2 and I.B of the Commission Order.

## SECOND CAUSE OF ACTION

39. Through the statements described in Paragraphs 11-30, and other statements like those, Defendants have represented that the experience represented in testimonials and endorsements describing lost pounds, inches, or clothing sizes represent the typical or ordinary experience of members of the public:

    a. using only the ab GLIDER™ without engaging in other exercise or dieting; or

    b. using the ab GLIDER™ for only 3 minutes a day.

40. In making such claims, Defendants neither possessed competent and reliable scientific evidence to substantiate the representations described in Paragraph 39, nor "clearly and prominently" disclosed: (1) what the generally expected results would be of using only the ab GLIDER™ or using the ab GLIDER™ for only 3 minutes a day; or (2) the limited applicability of the endorsers' experience to what consumers would generally expect to achieve using only the ab GLIDER™ or using the ab GLIDER™ for only 3 minutes a day.

41. Therefore, Defendants have violated Section II of the Commission Order.

## CONSUMER INJURY

42. Consumers have suffered and continue to suffer substantial monetary loss as a result of Defendants' unlawful acts or practices. Absent injunctive relief by the Court, Defendants are likely to continue to injure consumers and harm the public interest.

## CIVIL PENALTIES, INJUNCTIVE AND OTHER EQUITABLE RELIEF FOR ORDER VIOLATIONS

43. Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*) as modified by Section 4 of the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended, and Section 1.98(c) of the FTC's Rules of Practice, 16 C.F.R. § 1.98(c), authorizes the Court to award monetary civil penalties of not more than $16,000 for each violation of the Commission's Order.

44. Section 5(*l*) of the FTC Act, 15 U.S.C. § 45(*l*), authorizes this court to grant injunctive and such other relief as the Court may deem appropriate to halt Defendants' violations of the Commission Order and to prevent and remedy any violations of any provision of law enforced by the Commission.

## PRAYER FOR RELIEF

45. WHEREFORE, plaintiff United States of America, pursuant to Sections 5(*l*) and 16(a) of the FTC Act, 15 U.S.C. §§ 45(*l*) and 56(a), requests that the Court:

    a. enter judgment against all Defendants and in favor of Plaintiff for each violation alleged in the Complaint;

    b.   enter a permanent injunction to prevent future violations of the Commission Order by Defendants;

    c.   award Plaintiff monetary civil penalties from Defendants for each violation of the Commission Order;

    d.   award Plaintiff the costs of bringing the action, as well as such other and additional relief as the Court may determine to be just and proper.

FOR THE COMMISSION:

JAMES A. KOHM
Associate Director for Enforcement

DOUGLAS WOLFE
Assistant Director for Enforcement

_____
GREGORY J. MADDEN
Attorney
Federal Trade Commission
Division of Enforcement
600 Pennsylvania Avenue, N.W.
Mail Drop CC-9528
Washington, D.C. 20580
(202) 326-2426
(202) 326-3197 (fax)
gmadden@ftc.gov

FOR THE PLAINTIFF
UNITED STATES OF AMERICA:

JOYCE R. BRANDA
Acting Assistant Attorney General

JONATHAN F. OLIN
Deputy Assistant Attorney General
Civil Division

MICHAEL S. BLUME
Director

ANDREW E. CLARK
Assistant Director

_____
JAMES W. HARLOW
Trial Attorney
Consumer Protection Branch
450 Fifth Street, NW
Room 6400 – South
Washington, DC 20001
(202) 514-6786
(202) 514-8742 (fax)
James.w.harlow@usdoj.gov